## Mary Kempsey v. Nancy McGinniss et al.

*Wills: Evidence of testamentary capacity: Medical experts: How examined: Province of the jury.* Capacity to make a will, or what in any case shall be the legal standard of testamentary capacity, is always a question of law. The physical or mental condition from which that capacity may be deduced, is a question of fact, which may be shown by evidence of physical or mental manifestations, and the opinions of professional witnesses, as inferences of fact thereon; but unless. the jury find such manifestations as facts, they cannot treat as evidence the opinions based on them.

It is proper to consider the character of a will,—whether simple in its provisions and application, or otherwise, in determining the question of the capacity to make it; the question always relates to the capacity to make and understand the will in controversy.

It may be regarded as settled, that, upon questions relating to the mental capacity of a person to make a will, the opinions of men skilled in medical science, though not founded on their own personal observation of the facts of the particular case, are admissible in evidence. The facts, however, on which the opinion is founded, must be stated, and the jury left to determine, not only the truth of the facts, but of the opinion founded upon them. The opinion of the expert is a fact bearing on the question of the mental condition of the testator; and, as such, its proper weight falls within the province of the jury to determine; consequently, when there is conflict in the testimony as to the facts of mental condition, concerning which the opinion of the

professional witness is desired, and which have not been observed by him, the proper mode of interrogating such a witness is by stating in the question itself the facts to be assumed, on which the opinion is asked and must be based; and a question, which calls for an opinion based upon, or which invites the judgment of the witness as to the truth or falsity of any of the evidence in the case, is erroneous, because it devolves on the witness a function which is the peculiar province of the jury.

It is not competent for a professional witness to give his opinion of a case, —assuming the testimony of certain specified witnesses to be true, when it appears that he did not hear the whole of their testimony, and it does not appear what facts stated by them he did, and what he did not hear.

*Probate of wills: Order of proof.* In the probate of wills, when the capacity of the testator is contested, after a *prima facie* case has been established by the proponents,—see *Taff v. Hosmer,* 14 *Mich.,* 309, and *Aikin v. Weckerly,* 19 *Mich.,* 482,—the case for all purposes connected with the order of proof, upon the question of capacity, stands the same as if the burden of proof throughout rested upon the contestants, and they will be bound by the rules, as to the order of proof, applicable to the party having the affirmative. After the pro- ponents have replied by putting in their testimony, which may include testimony, the same in character as that offered to make their *prima facie* case, and must include all their testimony in support of their case,—except, of course, that in reply to matter called out by the contestants in their rebutting evidence,—the contestants may reply, by any testimony strictly rebutting, to such new facts as may have been brought out by the proponents, not pertaining to the contestants' case, or, though bearing upon it, could not have been reasonably anticipated by them while giving their evidence in chief.

Testimony offered by a party in reply, which might properly have been introduced in chief, and which has but a remote, if any, bearing upon the case, is within the discretion of the Court, and may be admitted or excluded without error.

*Heard May 10. Decided July 7.*

Error to Kalamazoo Circuit.

This case was brought into the Circuit Court for the County of Kalamazoo, by the appeal of Mary Kempsey from the judgment of the Probate Court of that county, allowing the will of Thomas Patterson. The issue formed in the Circuit Court was tried by a jury, who rendered a verdict for the proponents. The questions for review in this Court arise upon the rulings of the Circuit Judge on the admission and rejection of evidence as to the testa- mentary capacity of the testator.

Dr. William Mottram was called by the appellant and contestant, and after testifying to facts within his personal observation, as to the condition of the testator, stated that he heard Dr. Abbott testify, and recollected the description

he gave of Patterson, and that he heard Eckard testify except a part of the cross-examination. He was then asked,—

Question. Assuming the testimony of the witness as true in reference to the condition of Patterson during the days they mentioned, what, in your opinion, was his capacity to make a will, or as to his being of sound and disposing mind?

This question was objected to by appellees as incompetent and irrelevant. The Court sustained the objection. To which ruling and decision the counsel for appellant duly excepted.

Question. Assuming the testimony of Eckard in regard to the condition of Patterson during the latter part of Thursday and Thursday night, and Friday and Friday night, including his conversation and what he did, to be true; and assuming the testimony of Dr. Abbott in regard to his condition and symptoms from Friday morning to the time you went there, to be true, including your own observation on Saturday, what is your opinion as to Patterson being of sound disposing mind and memory on Friday morning, so as to be able to transact business continuously and understandingly from nine till eleven o'clock?

This question was objected to by the counsel for appellees on the ground of irrelevancy and incompetency, and it was argued that the answer to the question would take the question at issue from the jury; and that an expert cannot be allowed to give an opinion upon facts that were not under his own observation. The Court sustained the objection. To which ruling the counsel for the appellant duly excepted.

Question. Assuming that the deceased, Thomas Patterson, was a man 63 years of age, of thin chest, and weak physical frame, and stooping; that he was attacked the 12th of

December, 1865, with pleuro-pneumonia; that on the afternoon of Thursday, the 14th of December, he was in great pain and suffering, breath short, and through that night the pain and suffering and short breathing continued, with much thirst, with his mind wandering and flighty, running from one subject to another, his face pale and yellowish, purple under his eyes, that he was sleepless, and yet in a drowsy condition throughout the night, muttering and talking to himself, insisting that his horses were sick, when in truth they were not sick; that on Friday morning he suffered and complained of pain, short breath, and much thirst, taking no notice of a person whom he himself had called in; that he was on the same morning at about nine o'clock, found by a physician who had examined him, a very sick man, in great pain, short breathing, not much expectoration, only about a gill during the day, and that of a brownish color; skin neither hot nor cold; that his condition remained so during that day; that on Saturday morning he was worse; that on an examination of him by you on Saturday afternoon, his lungs were found in the second stage of that disease, with little or no expectoration then, and no pain, but complaining of having suffered great pain, breath short, voice bronchial, and lying in a state of stupor except when aroused by a question put to him, and then immediately subsiding into stupor again, with skin cool, feet and hands cool, ankles and wrists clammy, and face and extremities somewhat livid, and that he died about 11 o'clock that night, * what is your opinion as to Patterson being of sound disposing mind and memory on Friday morning, so as to be able to transact business from nine to eleven o'clock?

This question was objected to by the appellees on the following grounds: 1st. The question assumes facts of which there is no proof. 2d. It asks the opinion of the

witness upon the principal question to be found by the jury,—that is, the soundness of the mind of the testator. The objection was sustained by the Court upon the second ground. To which ruling the appellant duly excepted.

Question. The same hypothetical question to the " * " with the following addition: "What was the effect of that disease upon the physical and mental faculties of the said Patterson on the morning and during the forenoon of Friday, the 15th, the day before his death," was put to the witness, and answered by him.

Dr. Foster Pratt was sworn for appellant, and testified that he had heard nearly all the testimony given by Eckard, Drs. Mottram and Abbott. The same hypothetical question that was put to the witness, Dr. Mottram, and answered by him, was put to this witness and answered.

Question. The same hypothetical question to the " * " with the following addition: "In your opinion, was Patterson on the morning of the 15th, the day before his death, and during the forenoon of that day, capable of planning and executing such a paper as is here offered as his will," was then put to the witness. This question was objected to by the appellees on the ground that it calls for the opinion of the witness on a fact to be found by the jury. Objection sustained by the Court. To which ruling the appellant duly excepted.

Question. The same hypothetical question to the " * " with the following addition: "In your opinion, was Patterson, at and during the time above noted, in a physical and mental condition to transact any business requiring an exercise of the judgment, the reasoning faculties, and a consecutive continuation of thought," was then put to the witness. This question was objected to by the appellees on the same ground as the last. The Court sustained the objection, and the appellant duly excepted.

Question. The same hypothetical question to the "*" with the following addition: "In your opinion, was Patterson, at and during the time above noted, in a physical and mental condition to make a will," was then put to the witness. This question was objected to by the appellees on the same grounds as the two last. The Court sustained the objection, and the appellant duly excepted. Other witnesses were sworn for appellant, and testified as to the effect of the disease upon the mental and physical condition of Patterson on the forenoon of Friday, the 15th, the day before he died, and appellant rested.

The appellees then recalled Dr. Jonathan G. Abbott. The appellant objected to the re-examination of this witness on the ground, that while the witness was upon the stand he was fully examined upon all material questions touching the execution of the will. The Court overruled the objection, and the appellant duly excepted.

The contestant removes the cause to this Court by writ of error.

*Geo. V. N. Lothrop*, for plaintiff in error.

Few subjects have received more frequent consideration by the courts of this country and England that the mental capacity of persons to do an act brought in question, or their legal responsibility for the violation of law when deprived of some portion of the intellectual strength which is presumed to exist in every one who has once arrived at an accountable age.

Sanity terminates in insanity, and capacity fades into incapacity, by degrees so insensible that it is often difficult to find the line which divides them. So indistinct is the boundary between them that even the daily observation of ordinary men fails to detect the passage of the mind from one to the other, and courts of law, when called upon to

determine the question, have not unfrequently been compelled to seek the aid of scientific investigation, and invoke the skill of experts. While it is too late to doubt the admissibility of this species of evidence in these cases, the conflict of authorities at once renders apparent the extreme difficulty which attends its introduction.

This difficulty lies not so much in defining the limits of expert testimony as in fixing upon some general form of the question to be propounded to the witness, which, while it gives him entire freedom within the recognized boundaries, shall yet unfailingly prevent him from traveling beyond them.

A full review of the decisions relative to the admission of the opinions of experts who are to rely solely upon the testimony of other witnesses, will discover the two following rules:

1st. The question must be so framed that the witness shall not be called upon to decide upon the truth or falsity, in fact, of the assumed basis. 2d. It must be in such form that the jury, while giving due weight to the opinion expressed, shall yet be at, and feel complete liberty to pass upon, the existence or non-existence of the facts presented as the foundation of such opinion. In order to insure the full operation of these two rules, there is an evident tendency to establish a third, or rather a single rule, which shall take the place of the two former, viz: That the question must, in cases like the present, be propounded *hypothetically*. In some instances the form has been given in express terms from the bench.—*Com. v. Rogers, 7 Met., 505, 506; Woodbury v. Obear, 7 Gray (467), 471; State v. Windsor, 5 Harr. (Del.), 534.* The propriety of the hypothetical form has been repeatedly recognized.—*Boardman v. Woodman, 47 N. H. (120), 135; Perkins v. Concord R. R., 44 N. H., 225; Spear v. Richardson, 37 N. H. (21), 28, 34; Hovey*

21 MICH.—Q.

*v. Chase, 52 Me. (304), 307; U. States v. McGlue, 1 Curtis C. C. R. (1), 9; Negro Jerry v. Townsend, 9 Md. (145), 158; People v. McCann, 3 Park, C. R. (272), 277, 297; Rauch v. Zehring, 59 Penn., 74.* In New Hampshire this form has become a matter of practice.—*Boardman v. Woodman.* But while the purely hypothetical form, as stated above, has been so frequently recognized, it has not, as yet, become exclusive (unless, perhaps, in New Hampshire), even where it has been recommended.—*Hunt v. Lowell Gas Light Co., 8 Allen (169), 172.*

II. The cases have divided expert witnesses, so far as relates to their examination, into two classes: 1st. Those who give their opinions from a personal knowledge or observation of the facts. 2d. Those who, without such personal knowledge or observation, must rely upon the testimony of preceding witnesses.

The authorities all virtually concede that like weight is to be given to the opinions of these two classes. *Beaubien v. Cicotte, 12 Mich., 459,* holds that experts and non-experts, speaking from observation, are placed upon one and the same ground so far as concerns the expression of opinion. The form of the question to be proposed to each must be the same and go to the same point.

As between the two classes of experts before mentioned, the premises of the interrogatory must necessarily be varied somewhat, to suit the different positions they occupy as witnesses, but it is evident the call for opinion may and should be the same in both cases. It follows, therefore, that since the same opinion may be required from the non-expert speaking from observation, and from the expert speaking only from the testimony, so much of the question as tends to elicit such opinion should be substantially in the same terms; at least the form which is proper in the one case is equally so in the other.

KEMPSEY v. McGINNISS.

III.  In *Beaubien v. Cicotte, 12 Mich., 466, 467*, the questions, so far as they relate to the sanity of the testator, seem to be entirely similar to those proposed in this case. The first question to Dr. Mottram called for the opinion of the witness as to Patterson's capacity to make a will. It is conceded the cases upon this form of the question are conflicting.

In *Wogan v. Small, 11 Serg. and R., 141*, the question was to a testator's "fitness or unfitness to make a will;" so in *Wilkinson v. Pierson, 23 Penn., 119*, where the validity of a deed made by a deceased person was in dispute, whether he had capacity to "*make a contract* or transact important business;" so in *Fenwick v. Bell, 1 C. and K., 312*, suit for collision, whether "the collision between the two ships could have been avoided by proper care."

In some of the cases the form of the questions is not given, but the answers of the witnesses go directly to the precise issue. Such are *Weir v. Fitzgerald, 2 Brad. Sur. R. (42) 57*, sanity of a testator; *Thornton v. Royal Exchange Assurance Co., Peake's Cases, 25 (1790)*, seaworthiness of a vessel; *Rex v. Pritchard, 7 C. and R., 303 ; Rex v. Dyson, Id., 305*, capacity of prisoners to understand the proceedings of their trial.

The form of the first interrogation proposed to Dr. Mottram in this case, is substantially the same as found in *Negro Jerry v. Townsend, 9 Md. (145), 148 ; People v. Kleim, 1 Edm., 13 ;  8 Abbott's N. Y. Dig., p. 265, § 61 ; Hunt v. Lowell Gas Light Co., 8 Allen, 169 ; Fenwick v. Bell, 1 C. and R., 312*.

IV.  The second question to Dr. Mottram was clearly relevant to the issue, viz: the competency of the testator. The attention of the witness was called to his own examination of Patterson, and his opinion as to the capacity of the testator's mind a *short time prior* was requested.  Even

when taken alone, the question in this respect would be
unobjectionable.—*People v. McCann, 3 Park.,* (*272*), *277,*
*278; Norwood v. Marlow, 4 Dev. and Batt.* (*442*), *451.*
The case comments on case of *State v. Scott, 1 Hawks, 24,*
where a different doctrine was adopted. To the same points
see *Grant v. Thompson, 4 Conn.* (*203*), *208; Kinne v.*
*Kinne, 9 Conn., 102; Dickinson v. Barber, 9 Mass., 225.*

The question limited the *assumed facts* to those contained
in but a portion of the evidence. In *1 Carr. & Kir., 312,*
the opinion of the witness was required upon the "facts as
proved by the plaintiff." In *8 Allen, 169,* the same limit-
ation was used. In *Woodbury v. Obear, 7 Gray, 467,* the
Judge in the Court below had permitted the counsel to
inquire of a medical expert who had heard the evidence,
and obtain "his opinion upon and in relation to any prop-
osition or hypothesis which he (the counsel) supposed was
sustained by the whole *or any part* of the evidence in the
case," and this was held correct. See, also, *Morehouse v.*
*Matthews, 2 Comst., 514;* and, precisely in point, *Heald v.*
*King, 45 Maine,* (*392*), *396.*

Objection was also made that the answer to the question,
in the form in which it was put, "would take the question
at issue from the jury." This objection, although substan-
tially the one so often made, is nevertheless vague, and
leaves no inconsiderable doubt as to its precise meaning
and extent. If it be that the answer of the witness must
be co-extensive with and cover the same ground as the
finding of the jury, *Beaubien v. Cicott, pp.* (*504*), *505, 506,*
is a sufficient answer. If the objection be, in fact, that the
witness being permitted to give his opinion, the jury
are bound to follow it, the authorities are otherwise.—
*Humphries v. Johnson, 20 Ind., 190; Watson v. Ander-*
*son, 13 Ala.,* (*202*), *204; McAllister v. State, 17 Ala.* (*434*),
*438; United States v. McGlue, 1 Curtis's C. C. R.,* (*1*),

*9 ; Hovey v. Chase, 52 Me., (304), 307 ; Hunt v. Lowell Gas Light Co., 8 Allen, 169 ; Fenwick v. Bell, 1 Carr. & K., 312 ; Beckwith v. Sydenbotham, 1 Camp., 117.* See, also, closing remark of *Tindal C. J.,* in McNaughten's case, *1 Carr. & K., (129), 136, note.* If the objection arises from the question contemplating an opinion as to the disposing mind and memory merely of Patterson, the cases cited by this Court, with apparent approval, in *Beaubien v. Cicott, p. 505,* would seem to fully authorize it.

V. We now come to the questions, purely hypothetical, put to the witnesses admitted to be experts. Although in some of the cases a distinction has been attempted between questions of the character just passed, and one which is entirely suppositious in form, it is difficult to see where, in fact, it lies. In *People v. McCann, 3 Park. C. R., (272), 277,* a question somewhat similar to the first two put to Dr. Mottram was asked the witness, and excluded. See, also, *Negro Jerry v. Townsend, 7 Md., 158, 159.*

The right to ask hypothetical questions has been recognized in this State.—*Beaubien v. Cicotte, 12 Mich., 501 ; White v. Bailey, 10 Mich., (155), 161,* and is not denied in this case. The proper occasion for its use is stated in *Woodbury v. Obear, 7 Gray, 465 ; Hunt v. Lowell Gas Light Co., 8 Allen, 172.*

VI. The rejection of the questions proposed by the appellant, as to the sanity of Patterson, and the admission of the interrogatory relative to the *effect* of disease upon his mind, founded upon the hypothetical statement, taken in connection with the charge of the Judge to the same point, strongly intimates that the decision of the Court was rested on the *dicta* of Judge Manning in *White v. Bailey, 10 Mich., (155), 159.* That case is clearly distinguishable from the present.

VII. Aside from the execution of the will, the appellees

were bound to show the sanity of Patterson in the first instance. This was their case. The entire testimony of Dr. Abbott, although a subscribing witness to the will, had been put in for this purpose. After the appellant had rested, Abbott was recalled, and virtually permitted to go over the same ground as to mental capacity, notwithstanding the objection of appellant's counsel. This was plainly irregular.

*D. Darwin Hughes* and *H. F. Severens,* for defendants in error.

The first question ruled out was: Supposing the testimony to be true, what, in your opinion, was his capacity to make a will, as to his being of sound and disposing mind?

The next was: Assuming Eckart's testimony and Abbott's to be true, in connection with your own observation, what is your opinion as to Patterson's being of sound and disposing mind and memory on Friday, so as to be able to transact business continuously and understandingly from nine to eleven o'clock?

The third put a hypothetical state of facts, and on them the witness was asked: What is your opinion as to Patterson being of sound disposing mind and memory on Friday morning, so as to transact business from nine to eleven o'clock?

The point of objection to these several questions is that they call for a legal rather than a medical opinion. The exact point was ruled in this Court in *White v. Bailey, 10 Mich., 159.*

The question there was, What was his mental capacity? and it was held improper on the ground that it could only mean his mental capacity to make a will, of which the witness could not judge. We understand the doctrine of

this case to remain undisturbed by anything in the Beaubien case. The first two questions were also open to another objection, that they assumed the testimony to be true instead of putting a hypothetical case.—*1 Red. on Wills, 148 ; People v. McCann, 3 Park. Cr. R., 272.*

The questions put to Dr. Pratt were: 1st. A hypothetical statement of the facts and the question, "In your opinion was Patterson, on the morning of the 15th, the day before his death, and during the forenoon of that day, capable of planning and executing such a paper as is here offered as his will?" 2d. Same hypothetical case and question, "In your opinion was Patterson, at, and during the time above noted, in a physical and mental condition to transact any business requiring an exercise of the judgment, the reasoning faculties, and a consecutive continuation of thought?" 3d. Same hypothetical case and question, "In your opinion was Patterson at, and during the time above noted, in a physical and mental condition to make a will?"

These questions were all ruled out, but it must be remembered that the witness had already stated at length his answer to the question put on the same hypothetical facts, "*What would be the effect on his physical and mental condition?*" The questions were but an effort to get from the witness an answer on the legal question, as to what capacity is necessary to transact business, and to make a will. This witness had never seen the testator at all, so that what is said in the Beaubien case does not apply.

The next exception relates to the examination of Dr. Abbott on the rebutting case. The contestant objected to his examination on the ground that in the case in chief he had been examined on all material points. This objection was overruled and exception taken. It will be seen by the bill of exceptions that when Dr. Abbott was called on

the proponent's case in chief, he was called merely as a subscribing witness, and examined only as to the statutory requisites; and on the subject of mental condition, said: "In my opinion he was of sound mind when he executed the will." The question is, whether putting a question to show *prima facie* the statutory requisite of soundness of mind and memory prevents our calling the witness on the rebutting case for any purpose. The bill of exceptions shows no avowal of any particular object in calling the witness, so that the objection is to recalling him at all for any purpose. There can certainly be nothing in this exception.

CHRISTIANCY, J.

The question in this case was upon the validity of a paper claimed by the appellees—the proponents—as the last will and testament of Thomas Patterson, deceased.

The main ground upon which its validity was assailed was, that at the time it was drawn and executed, the testator was not of sound and disposing mind and memory; but that his mental faculties were so far enfeebled and overcome by disease as to render him incapable of properly understanding his relations to others, their relative claims upon his bounty, the particulars of his property, and the nature of the dispositions made by the will.

It was not claimed that he had ever exhibited any symptom of insanity or any weakness of intellect until after he was attacked with the disease of which he died, which was pneumonia or pleuro-pneumonia. This attack was some two days before the will was made, and he died on the night of the succeeding day.

The will was drawn up by one Clark, in the room and in the presence of the testator, under such directions and instructions as the testator gave him at the time, which

occupied from nine to eleven o'clock A. M. of Friday, when it was executed. It was duly witnessed by Clark and by Doctor Abbott, a physician who had been that morning called to see him, and who saw him for the first time during his sickness when called in to witness the execution, but remained with him a large part of the day. Another physician, Doctor Mottram, was called about the middle of the next day.

These were the only physicians (as far as appears) who saw him during his sickness. They, and several unprofessional witnesses, testified fully from their personal observation, as to his physical and mental condition at the respective times when they saw him, giving their opinions as to the condition or state of his mental powers, and the facts upon which their opinions were founded.

No controversy arises upon the questions touching mental capacity put to any of the witnesses testifying from their personal observation alone. But the contestants offered in evidence the opinions of several professional witnesses who had not seen the testator during his illness; and upon the proper mode of conducting such an examination some of the main questions in the case arise.

We consider it too well settled to require the citation of authorities, that, upon questions of this kind, the opinions of men skilled in that particular science, in other words, physicians, are admissible in evidence, though not founded upon their own personal observation of the facts of the particular case. But, if the question had not already been closed by authority, I should be much inclined to doubt the propriety of receiving the opinions of merely medical witnesses, under such circumstances, to anything more than physical facts, such as the physical effects of the disease; as I think it may well be doubted whether the skill of ordinary physicians in metaphysics, or their judgment upon

merely mental manifestations, has been shown by experience to be of any greater value than that of intelligent men in other departments of life. The question, however, seems to be settled in their favor upon authority.

But in the case of such professional witnesses, as well as in that of unprofessional witnesses,—who are allowed to give their opinions only from personal observation,—the facts upon which the opinion is founded must be stated, and the jury must be left to determine whether the facts stated, as well as the opinions based upon them, are true or false. And it is obvious that when such opinions are given without personal knowledge or observation, such opinions must be based either upon facts observed and stated by other witnesses who knew them, or upon a state of facts assumed for the purpose as a hypothetical case, which the jury may find from the evidence.

But as the jury are to pass upon the credibility of all witnesses and the weight of the evidence, and to determine all matters of fact involved in the case, no witness can have the right to usurp the power of the jury, or to determine any of these questions for them, nor even to give an opinion upon the weight or credibility of any of the testimony. No question, therefore, can be put to the witness which calls upon or allows him to decide upon the truth or falsehood of any evidence in the case. If, therefore, there be any conflict between the witnesses as to the facts upon which a professional opinion is sought, it is manifest the professional witness cannot, though he has heard the testimony, be asked to base his opinion upon that testimony, upon the hypothesis of its truth; because, to reach his conclusion, he must necessarily pass upon the credibility of the witnesses and the weight of the evidence. In the case of any such conflict, therefore, the only proper mode of interrogating the professional witness, is by stating

and enumerating in the question itself, the facts to be assumed. And when his opinion is asked upon a case (such as the physical or mental effects of a disease upon a certain person, under certain circumstances and exhibiting certain symptoms), as stated by other witnesses, when there is no conflict, he is to assume, without undertaking to decide, the truth of their statements, and to base his opinion *only* upon the facts thus assumed, leaving the jury to determine whether such assumed facts are true or false.

Now, it is manifest that this is but giving an opinion upon a hypothetical case, as much as if the facts testified to by the other witnesses had been expressly and hypothetically assumed and enumerated in the question itself. And it would seem, from the nature of the case, to be impracticable to frame any proper question for eliciting the opinion, which is not in the nature of a hypothetical case, being based upon an assumed state of facts which the jury may, or may not, find to be true. And as a collection or state of facts assumed, whether few or many, constitute in the aggregate, the basis on which the opinion is asked; if it does not appear that the opinion would be the same, with any of those facts omitted, it necessarily follows that, if the jury should negative or fail to find any one of the assumed facts, the opinion expressed cannot be treated as evidence, but must be rejected by the jury.

From these considerations it necessarily follows that the jury should know just what facts are assumed, and enter into the collection or state of facts upon which the witnesses' opinions are based. Otherwise they cannot know whether they ought to treat the opinions as evidence at all; since they can form no opinion whether such assumed facts, or the opinions based upon them, are true or false.

If one or more witnesses have stated, in the presence and hearing of the professional witness, the facts observed

(such as the symptoms of the person in question, and his various physical and mental manifestations), and the witness is asked his opinion upon the hypothesis that *all* the facts stated by the witness or witnesses named are true, the jury, having heard all the evidence alluded to, know what facts are assumed by the witness in giving his opinion. But if the witness be asked his opinion of a case, assuming the testimony of certain specified witnesses to be true, and it appears that he did not hear the *whole* of their testimony, and it does not definitely appear what facts stated by them he has heard, and what he did not hear, the jury cannot know upon what state of facts he forms his opinion, nor whether the facts he has assumed are true, nor whether his opinion would have been the same if he had heard the whole; and his opinion cannot, therefore, safely be received as evidence.

This disposes of two questions put to Dr. Mottram, the rejection of which was excepted to by the contestant; both of which were based upon the assumed truth of the testimony of Eckard and Dr. Abbott. It appears from the statement of Dr. Mottram himself that he did not hear the whole of Eckard's testimony, and it does not appear what particular facts stated by him he did, and what he did not hear.

It is also necessary, in questions of this kind, to bear in mind the respective provinces of the Court, the jury and the witnesses. The Court are to decide all questions of law, the jury those of fact. Witnesses are sworn, not to enlighten the Court upon matters of law, but the jury (and to some extent the Court) upon matters of fact. And, in this particular class of questions, the professional witness is allowed to state his opinions as inferences of fact, notwithstanding that, in doing this, he gives his opinion upon the existence, or non-existence, of the same

resultant fact or facts which the jury are to find by their verdict. (Though some authorities require the questions to be so framed as to avoid even this result. See, for instance, *Rex. v. Wright, R. & R., Cr. Cas. 456; Sills v. Brown, 9 C. and P., 601; Farar v. Warfield, 8 Mart. N. S., 695, 696; Jameson v. Drinkald, 12 Moore, 148; Earl of Farrar's case, 19 Howell, 943; Regina v. Francis, 4 Cox C. C., 57;* and see *4 Cox, 451.*)

But the jury are bound to take the law from the Court, and to find the facts from the evidence. By a special verdict, which they may always render, they merely find the facts, and leave the Court to apply the law; by a general verdict, which they are not bound to find, they merely apply the law given them by the Court, to the facts found by themselves,—giving, in this way, the combined result of law and fact.

To what extent and in what manner the mind of the testator was affected by the disease, or what was his mental condition, was a question of fact, upon which it was competent for the professional witnesses to express their opinions. But what degree of mental capacity is necessary to enable a testator to make a valid will, to what extent and with what degree of perfection he must understand the will and the persons and property affected by it, or to what extent his mind must be impaired to render him incapable, is a question of law exclusively for the Court, and with which the witnesses have nothing to do. And it is a question of law of no little difficulty, which calls for the highest skill of competent jurists, and upon which the ablest courts are not entirely agreed. The rule settled by the weight of authority, undoubtedly is, that a less degree of mind is requisite to execute a will than a contract; and though the testator must understand substantially the nature of the act, the extent of his property, his relations

to others who might, or ought to be, objects of his bounty, and the scope and bearing of the provisions of his will, and must have sufficient active memory to collect in his mind, without prompting, the elements of the business to be transacted, and to hold them in his mind a sufficient length of time to perceive at least their obvious relations to each other, and be able to form some rational judgment in relation to them (*Parish Will case, 25 N. Y., 9*); yet it is quite clear, from the great weight of authority, that he need not have the same perfect and complete understanding and appreciation of any of these matters in all their bearings, as a person in sound and vigorous health of body and mind would have, nor is he required to know the precise legal effect of every provision contained in his will; for upon this even the draftsman of the will, though competent and in full possession of all his faculties, may often fail, and even the best lawyers may not be able to pronounce with certainty till the question is settled by judicial authority. But it is unnecessary here to fix the legal standard of capacity, since, though error was assigned upon this part of the charge, it was not insisted upon on the argument, and the charge was, I think, substantially accurate. I only advert to the point to show the impropriety of allowing the witnesses to fix the legal standard of testamentary capacity.

And if—as common experience has shown, and as Courts have often remarked—opinions of professional witnesses upon such questions have become of little practical value upon trials, from the almost universal conflict between those called upon the different sides,—and this upon questions pertaining to their own peculiar profession,—such opinions must be rendered utterly useless, and become a source of error and confusion, if the professional witness is allowed to fix his own legal standard of testamentary

capacity, thus mixing up in the minds of the jury his conclusions upon matters of law, of which he is ignorant, with his conclusions from facts pertaining to his profession, which he claims to understand, while his professional brother, testifying on the other side, equally competent, comes to directly opposite conclusions from the same facts. Besides, if each witness is allowed to fix his own legal standard of testamentary capacity, no two of them will be likely to fix upon the same; and there may be an apparent agreement while they differ in fact, and an apparent conflict when there is a real coincidence in opinion; and the jury have no means of knowing the real meaning of the witnesses or judging of the value of their testimony.

It may be urged in reply to this, that the confusion arising from allowing witnesses to answer questions involving their opinion of the legal capacity of a party to make a will, may be cleared up by a cross-examination, ascertaining what, in his opinion, constitutes such capacity, and that any error in this respect may be corrected by the Court in his charge, or otherwise. But it seems to me much wiser, wherever it is practicable, to exclude the improper question, and avoid the confusion altogether, than to admit it first, and then undertake to get rid of its effects, an experiment which is never wholly successful.

I am aware there are many cases in which, upon similar questions, interrogatories have been allowed to be put to witnesses for their opinion, involving, as well their opinion upon the question of law (legal capacity), as upon the question of fact (what the capacity was). In most of them, however, the point I am discussing was not directly raised. And, upon principle, I can see no ground upon which such a course can be justified, when the nature of the case does not render it necessary, and it can, as in the present case, be just as well avoided.

I think the principle stated by my brother Manning, in *White v. Bailey, 10 Mich., 159,* is entirely correct, though I did not think the question to the witness in that case, called upon him to give an opinion upon testamentary capacity; and for this and other reasons apparent in the case, I did not concur in my brother Manning's opinion, but in that of my brother Campbell.

It would have been much fairer, more in accordance with principle, and much less in the nature of leading questions, to have put the questions in such a manner as to call only for an opinion of what the real state of the testator's mind was, how much intelligence he possessed, how far he was capable of understanding the nature and situation of his property, his relations to others, and the reasons for giving or withholding his bounty as to any of them, etc., than to ask them whether he had a disposing mind and memory, or whether he was capable of making a will. The course I have suggested as the true one, was adopted by the propounders in their examination of professional witnesses; and by the contestants also, in some of their questions which were not objected to by the proponents of the will. The form of the questions put to the witnesses for their opinion in *Beaubien v. Cicotte, 12 Mich., 459,* and approved by this Court, is correct in principle, and avoids the objection now under consideration (though some of the cases there cited I do not think sound in principle upon this point). These questions were, whether from the conversation then had with him, and from what he then saw of him, he was capable of understanding a document of any considerable length if it had been read to him. Also what capacity the testator had, and whether, in the opinion of the witness, the testator was, at the time, capable of holding a conversation like the one testified to by another witness. It is obvious, that, so far as the

point we are now discussing is involved, there is no distinction to be made between questions put to witnesses giving their opinions from personal observation, and those who give theirs upon a hypothetical state of facts.

A question was put to Dr. Mottram by the contestants, reciting all the facts relative to the physical and mental condition of the testator which any of the testimony then given had disclosed, and asking him, assuming these to be true, what was his opinion as to the testator's being " of sound and disposing mind and memory, so as to be able to transact business from nine till eleven o'clock," on the day in question. And Dr. Pratt was asked by them, assuming the same facts, whether, in his opinion, the testator " was in a physical and mental condition to make a will?" Both of these questions were, I think, objectionable on the grounds I have stated, especially the last question, as calling upon the witness for his opinion upon the legal standard of a disposing mind and memory, or the legal capacity to make a will: and both questions were overruled and exceptions taken. But even if these questions might have been admissible without error, still I do not think the judgment should be reversed for their exclusion; since questions assuming all the same facts and calling for the opinions of the same witnesses upon all the same matters of fact were allowed and put to both witnesses—when asked, assuming these facts, what, in their opinion, was the effect of that disease upon the physical and mental faculties of the testator, in answer to which they detailed their opinions in full.

Two questions, however, were put by the contestants to Dr. Pratt, upon the assumption of the same facts, and overruled by the Court, which I think did not properly fall within the objection I have been discussing. 1st. " Was the testator, in your opinion, at the time, etc., capa-

21 MICH.—S.

ble of planning and executing such a paper as is here offered as his will?" and 2d, "Was he in a mental and physical condition to transact any business requiring an exercise of the judgment, the reasoning faculties, and a consecutive continuation of thought?" The first of these questions was, I think, admissible under the decision of this Court in *Beaubien v. Cicotte, 12 Mich., 505,* and I concur entirely with my brother Campbell in that case, that it is proper to put such questions to the witness as call for his opinion upon the capacity of the party to understand the very act or kind of act in dispute. I am unable to see the soundness of the principle in which five of the Judges concurred in the Parish will case, that the question in every case is, "had the testator, as *compos mentis,* capacity to make *a* will, not had he the capacity to make the will produced." Men do not make wills in the abstract, but some particular will; and the question should, I think, always relate to the capacity to understand and make the will in controversy. Some wills are short, plain, and easy to be understood; others are long and exceedingly complicated in their provisions. If the testator sufficiently understands the short and simple will which he *has made,* it should not be set aside because he had not the capacity to understand the long and complicated one which he *did not make.*

But both the questions above mentioned put to Dr. Pratt, when fairly construed, call, I think, only for the witnesses' opinion as to the degree of intelligence actually possessed by the testator, without any opinion of his on the legal question of testamentary capacity; and this either party had a right to show, whether it should be greater or less than the law requires to constitute testamentary capacity in reference to the will in question. The rejection of these questions was, therefore, in my opinion erroneous.

The order of proof adopted on the trial was this: The propounders introduced the subscribing witnesses, proved the execution of the will, and made the formal or *prima facie* proof of the testator's soundness of mind, without going into the particulars of the testator's sickness or its effect upon his mind, and rested.

The contestants then went fully into their case to show the incompetency of the testator, introducing a number of witnesses, some of whom had seen and observed the testator during his sickness, who, after stating the facts, gave their opinions as to the condition of his mind, and others, who were physicians, giving their opinions upon the state of facts shown by those who spoke from observation, and upon the hypothesis that such facts were true. Nearly all this testimony tended to show the incapacity of the testator.

After the contestants had rested, the proponents introduced evidence in reply, and went fully into the question of the testator's competency, his previous habits of life, and state of health, his feelings towards his relations, his sickness and its effects, mental and physical, the state of his mind, and degree of intelligence at the time; introducing, among other evidence, the opinions of several medical witnesses based upon a hypothetical state of facts, shown mainly by *their* witnesses who had spoken from personal observation, and which differed, to some considerable extent, from the state of facts shown by the contestants, and upon the assumption of which *their* professional witnesses had given their opinions. All, or nearly all, of the testimony on the part of the proponents, tended to sustain the testamentary capacity. The proponents then rested.

This course or order of introducing the evidence, upon the question of capacity, was exactly in accordance with the rule sanctioned by this Court in *Taff v. Hosmer,*

*14 Mich., 309,* and *Aikin v. Weckerly, 19 Mich., 482.*
And we see no ground whatever for the objection made
to the re-examination of Dr. Abbott (one of the sub-
scribing witnesses), who was the first witness called for
the proponents after the contestants had rested. The objec-
tion was that, when he was on the stand before, he was
fully examined upon all material questions touching the
execution of the will. But the truth was, that though the
contestants had fully cross-examined him then, the exami-
nation on the part of the proponents was only general and
formal, in support of a mere *prima facie* case, and before
the testamentary capacity of the testator had been attacked
by the evidence of the contestants; and the proponents
did not fully examine him upon the entire question of
competency, and were no more bound to do so, in that
stage of the case, than they were bound to introduce and
examine all their other witnesses fully in that preliminary ·
stage of the case.

In this particular class of cases, and upon the question
of mental soundness or unsoundness, after a *prima facie*
case has been established by the proponents, the case, for
all purposes connected with the order of proof upon that
question, stands the same as if the burden of proof,
throughout, rested upon the contestants to show mental
incapacity.

It is also very clear that the contestants, before they
rested, were bound to introduce all their testimony in sup-
port of their case, and that they could not, after the pro-
ponents had gone fully into their evidence and rested, go
·again into evidence in support of their own case; but were
confined to strictly rebutting evidence, upon such new
facts as had been brought out by the proponents not per-
taining to the contestant's case, or, though bearing upon it,
yet could not reasonably have been anticipated by them

while giving their evidence in chief.—See *Starkie Ev.* (*Sharswood's ed.*), *p. 608 and notes ; Cow. & Hill's Notes to Phil. Ev., Note 500.* Dr. Lyon, testifying on the part of the proponents, had given his opinion in favor of the testator's mental capacity, based upon a hypothetical state of facts which the evidence on *their* part tended to show. After the proponents had rested, the contestant recalled Dr. Pratt, and proposed to put to him the same hypothetical question put to Lyon. This was objected to on the ground that the contestants should have gone fully into the matter as a part of their affirmative case. But the question related to a state of facts which had not been shown at the time the contestants were giving their evidence in chief, and which they could not then have been supposed to anticipate. This new state of facts, upon which Lyon had given his opinion in favor of the proponents, is to be treated as if it had been, in ordinary cases, a single new fact. The questions put to Pratt related to this new state of facts and the opinion of Dr. Lyon upon them, which was also a new fact, brought out by the proponents, and was therefore, I think, admissible. If the question put to Lyon, and proposed to be put to Pratt, had been based upon the same hypothetical state of facts disclosed by the evidence in chief of the contestants (and upon which their witnesses had expressed an opinion), it would, when offered by them in reply, have been inadmissible.

The propounders of the will would undoubtedly have had a right, in reply to the evidence of the contestants, to have had the opinion of their own professional witnesses upon the same hypothetical state of facts upon which the opinions of the contestant's witnesses had been given, and for the purpose of contesting the correctness of the latter ;

and I think the contestant must have a corresponding right, in reply, to test the correctness of the opinions of the proponents' witnesses upon the new state of facts upon which the opinions of the latter were given. Otherwise the result would be, that the contestant would have been bound by the opinions of the proponents' witnesses upon this new state of facts, while the proponents would not be so bound as to the opinions expressed by the witnesses of the contestant upon the state of facts assumed by *them.*

Though the contestant had gone fully into the nature, progress, and symptoms of the disease, for the purpose of showing the testator's incapacity, they had not asked "how long a fatal case of congestive chill usually lasts, from the time of the first attack?" nor, "how long a case of pleuro-pneumonia would run, of itself, when it terminates fatally?" But a witness for the proponents had testified on these points, and the contestant proposed these questions to a medical witness in reply, which were over-ruled. It is not easy to see how these facts could have had any material bearing upon the question in controversy. But, if they were at all essential, I am inclined to think the contestant should have introduced them in her evidence in chief. But from their remote bearing (if any) upon the case, and from the other consideration just mentioned, I am inclined to think the question of their admissibility in reply was fairly within the discretion of the Court, and that the evidence might have been admitted or excluded without error. But as the question, in its present form, will not be likely to arise upon a new trial, it is unnecessary to give a definite opinion upon it.

Several other errors were assigned on the record, but as they were not considered of sufficient importance to be urged on the argument, we do not deem it necessary to notice them.

The judgment of the Circuit Court must be reversed with costs, and a new trial awarded.

The other Justices concurred.