*In re* WEBER'S ESTATE.

HAGEN *v.* WEBER.

1. WILLS—VALIDITY—TESTAMENTARY CAPACITY.
Less mental capacity is required to make a valid will than to make contracts.[1]

2. SAME—INTOXICATION OF TESTATRIX—EVIDENCE.
Where intoxication of testatrix is made the basis for contesting the validity of the will, the testimony must be confined to the time involved in the transaction in controversy, since it is a temporary condition, and if testatrix was not overcome by drunkenness when the will was made, it is not important what her condition was on other occasions.[2]

3. SAME—CAPACITY—UNDUE INFLUENCE—EVIDENCE—DIRECTED VERDICT.
On the contest of a will for lack of testamentary capacity of testatrix, and undue influence on the part of proponents, evidence *held*, insufficient to warrant the submission of the questions to the jury.

Error to Wayne; Mayne, J., presiding. Submitted January 22, 1918. (Docket No. 163.) Decided June 3, 1918.

Wilhelmina Hahn and Christian F. Hagen presented for probate the last will of Friedricke Weber, deceased. From an order allowing the will, Charles F. Weber appealed to the circuit court. Judgment for contestant. Proponents bring error. Reversed, and remanded with directions.

*Andrew C. Paterson* (*John W. Beaumont*, of counsel), for appellants.

*Percy W. Grose* (*J. F. Wilson*, of counsel), for appellee.

[1]See note in 27 L. R. A. (N. S.) 2.
[2]See note in 39 L. R. A. 220.

In this case, Friedricke Weber, the testatrix, on October 12, 1911, with all legal formalities, executed the following will:

"I, Friedrica Weber, of the city of Detroit, in the county of Wayne and State of Michigan, being of sound mind and memory, do make, publish and declare this to be my last will and testament, in manner following, viz.:

"*First:*—I will and direct that all my just debts and funeral expenses be paid in full.

"*Second:*—I give, devise and bequeath to my son, Charles F. Weber, the sum of five dollars, he having already received the sum of three hundred dollars.

"*Third:*—I give, devise and bequeath to my nephew, Christian Hagen, the sum of three hundred dollars.

"*Fourth:*—I give, devise and bequeath to my sister, Wilhelmina Hahn, the sum of three hundred dollars.

"*Fifth:*—I give, devise and bequeath to my stepson, Charles Weber, the sum of fifty dollars.

"*Sixth:*—I give, devise and bequeath to Charles Weber, son of my stepson, Charles Weber, the sum of twenty-five dollars.

"*Seventh:*—I give, devise and bequeath to Clarence Weber, son of my stepson, Joseph Weber, the sum of twenty-five dollars.

"*Eighth:*—I give, devise and bequeath to Annie Hagen, wife of my said nephew, Christian Hagen, the sum of fifty dollars.

"*Ninth:*—I give, devise and bequeath to Burton Hagen and Frederick Hagen, children of said Christian and Annie Hagen, each the sum of twenty-five dollars.

"*Tenth:*—I give, devise and bequeath to Florence Hagen and Elmer Hagen, also called Florence Bambam and Elmer Bambam, children of my nephew Charles Hagen, deceased, each the sum of twenty-five dollars.

"*Eleventh:*—I will and direct that my executor hereinafter named erect a tombstone over my grave to cost the sum of twenty-five dollars.

"*Twelfth:*—All the rest and residue of my property of every kind and nature, I give, devise and bequeath to my said sister, Wilhelmina Hahn, and to my said nephew, Christian Hagen, to be divided between them, share and share alike.

"*Thirteenth:*—I hereby appoint my said nephew, Christian Hagen, of the city of Detroit, Wayne county, Michigan, sole executor of this my last will and testament.

"*Lastly:*—I hereby revoke all former wills by me at any time made."

Testatrix at the time the will in question was executed was 69 years of age and had been a widow for upwards of 10 years. She died January 3, 1913, some 15 months after the execution of the will. She left her surviving one son only, Charles F. Weber, the contestant. Testatrix was married in Germany at an early day and there gave birth to the contestant. When he was about two years of age she, with her husband, moved to this country, leaving the contestant in Germany with her sister, Wilhelmina Hahn, one of the proponents, where he remained in the care of his aunt until he was 13 or 14 years of age. He then came to Detroit and lived with his mother until he was married when he moved to Cleveland about the year 1887. His mother continued to live in Detroit until the summer of 1911 when because of physical infirmities and advancing years she joined her son in Cleveland. Either shortly before or shortly after going to Cleveland she had disposed of her home and her son had caused the money to be deposited in a joint account with him. She seems to have resented this act and had the account changed to her own name. Contestant then applied to the probate court of Cuyahoga county, Ohio, for his appointment as guardian of his mother's person and estate, claiming that she was addicted to the intemperate use of intoxicating liquors and unfit to care for herself or her property. The testatrix immediately employed counsel to defend her in that proceeding with the result that on September 25, 1911, contestant's petition was dismissed. Immediately thereafter the son sued his mother for board and care. This suit was settled by the testatrix by the payment

of $60 to her son and she immediately returned to Detroit where she lived with her sister, Mrs. Hahn, until October 11, 1911, when she went to live with her nephew, Christian Hagen. Between that time and her death she lived at several places, remaining in each only a few months. The will was admitted to probate on October 1, 1913, and an appeal was taken to the circuit court. Upon the trial in the circuit court much evidence was introduced pro and con upon the question of the testamentary capacity of the testatrix at the time the will was executed as well as upon the question of undue influence. These questions were both submitted to the jury over the objection of the proponents and a verdict was rendered in favor of the contestant.

In this court the case is reviewed by proponents under 65 assignments of error which in the main are divided into two classes:

*First,* Those bearing on the question whether the record contains any evidence warranting the court in submitting the question of the testatrix's capacity to the jury and

*Second,* Whether the record contains any evidence warranting the submission to the jury of the question of undue influence.

BROOKE, J. (*after stating the facts*). The record in this case shows without much dispute that the testatrix had for many years prior to her death been in the habit of indulging in the use of intoxicating liquors as a beverage. From the record we think it is not open to successful contradiction that this use tended to shorten the life of testratrix. It resulted finally in cirrhosis of the liver which was the immediate cause of her death. The evidence of Dr. Smith who treated her in the summer of 1911 is to the effect that she was then suffering from a progressive disease which would eventually weaken her physically and

mentally. Dr. Sunkle who treated her up to September, 1911, testified that she used intoxicants to excess which was evidenced by the appearance of her face which was red and the manner in which she walked about his office; that she was very nervous and complained of dizziness in her head:

"From that I concluded that she was not of sound mind. * * *

"*Q.* Doctor, from your examination of her and what you observed from time to time, the condition of her body and mind, what would you say—was she competent to transact any business involving any amount of money?

"*A.* No, sir, she was not, at least during the time I was treating her."

This testimony adverted to a period about two or three weeks prior to the execution of the will in question. Dr. Pfeifer tended her for some months in her last illness and after the execution of the will in question. He testified that when he first saw her he thought she was of the average mentality. Some 10 other witnesses were called by the contestant who gave evidence tending to show that testatrix indulged too freely in the use of intoxicants. When this testimony is all examined carefully, however, we are of opinion that it shows testatrix to have been a woman of considerable business ability, careful of her money and not easily imposed upon. She had disposed of her home but a few months before the will was made and no question of her competency was raised. She successfully defeated her son in an effort to prove her incompetent within a month of its execution. It is not shown that at the time the will was executed testatrix was under the influence of liquor nor indeed that she had tasted an intoxicant for two weeks prior to said date. She herself directed her nephew, proponent Hagen, to secure a lawyer for the purpose of having

her will drawn. This he at first declined to do but being importuned a second time he inquired at a nearby store for a lawyer and was directed to Mr. Paterson, a reputable lawyer, who appears to have had no knowledge of the parties prior to his employment, to draw the will. He secured from testatrix all the facts, names, and information necessary for the drawing of the will and drew it that evening at her house where it was executed in the presence of himself and Mr. Young, after it had been read to her. Both the scrivener and the other witness testified that at the time the will was executed the testatrix was entirely competent. There is absolutely no testimony in the record tending to show that on the 12th day of October the testatrix was not fully competent to make her last will and testament unless such an inference can legitimately be drawn from the evidence of the physician who attended her during the summer and early fall of 1911. We are of opinion that their testimony will not support that inference. It is elementary that less mental capacity is required to make a valid will than to make contracts. *Kempsey* v. *McGinnis,* 21 Mich. 123, 141, and *In re Barney's Will,* 187 Mich. 145, 157. In passing upon the capacity of the testatrix to make a will attention should be directed to the character of the instrument which she executed. The will in question is one of exceeding simplicity and easily understood by one of even limited intelligence. Even if it could be shown that the testatrix had not sufficient mental capacity to understand a lengthy complicated document, which is not the case, this will could not be set aside if it was such a paper as under the evidence in the record the testatrix could and did readily understand. *Kempsey* v. *McGinnis, supra,* and *Porter* v. *Throop,* 47 Mich. 313, 324.

Touching the question of the use of intoxicating liquors this court in *Pierce* v. *Pierce,* 38 Mich. 412, said:

"There is no foundation in reason or authority that we have found, for holding that a will is void for the intoxication of the testator.     *     *     *

"It is not impossible for a person more or less intoxicated to make a will which is not the product of the intoxication.     *     *     *

"We are further of opinion that inasmuch as it is a temporary condition, the testimony must be confined to the time involved in the transaction in controversy.   If Pierce was not overcome by drunkenness when he made his will, it is not important what his condition was on other occasions."

See, also, *Schneider* v. *Vosburgh,* 143 Mich. 476.

1. There was in our opinion no evidence warranting the learned circuit judge submitting the question of testamentary capacity to the jury.

2. Undue Influence.  It would be of no profit to the profession to set out in this opinion the evidence bearing upon this question.  It is sufficient to say first,— that there is no evidence of undue influence to be found in the will itself, considering the fact that contestant by his conduct had embittered his mother toward himself; that Mrs. Hahn, the proponent, was the sister of testatrix and had taken care of her only child in Germany for 11 or 12 years and that the other proponent was the son of Mrs. Hahn.  We think that the will itself not only bears no internal evidence of undue influence but represents the natural and probable workings of a normal mind.  There is evidence in the record that proponents desired to get the money of testatrix.  This desire, however, even if communicated to testatrix would not constitute undue influence. *Kneisel* v. *Kneisel,* 143 Mich. 384, 388; *In re Ganun's Estate,* 174 Mich. 286, 294.  See, also, *In re Williams' Estate,* 185 Mich. 97, 117, and *In re McIntyre's Estate,* 193 Mich. 257.  From a careful review of the entire record we are convinced that neither question should

have been submitted to the jury, but that a verdict should have been directed for proponents.

The judgment is reversed, with costs, and remanded to the circuit court where a judgment will be entered in accordance with this opinion.

OSTRANDER, C. J., and BIRD, MOORE, STEERE, FELLOWS, STONE, and KUHN, JJ., concurred.