*In re* ELLIOTT'S ESTATE.

ELLIOTT *v.* COLLINS.

1. WILLS—STATUTORY REQUISITES AS TO FORM.
   Will *held,* sufficient in form to comply with statutory requirements (3 Comp. Laws 1929, § 13482).

2. SAME—EXECUTION—EVIDENCE.
   Evidence *held,* to show there was compliance with statute in the execution of a will (3 Comp. Laws 1929, § 13482).

3. SAME—MENTAL COMPETENCY—DIRECTED VERDICT.
   Record, containing conflicting testimony as to mental competency of testatrix, *held,* to justify denial of contestant's motion for a directed verdict.

4. APPEAL AND ERROR—WILLS—MENTAL COMPETENCY—CONFLICTING TESTIMONY.
   Verdict sustaining validity of will cannot be said to be against great weight of the evidence as a matter of law where testimony as to mental competency of testatrix was in conflict.

5. EVIDENCE—EXPERT OPINIONS—BASIS.

Expert witness may not be permitted to state that he has read or heard testimony of a witness or witnesses and base his opinion upon such testimony without stating facts upon which he rests his conclusion.

6. SAME—HYPOTHETICAL QUESTIONS.

Expert witness may not be examined without proper hypothetical questions in which all of the facts from which he is to draw his conclusions are stated, where testimony is voluminous and conflicting.

7. SAME—EXPERT OPINIONS—BASIS.

Admission in evidence of medical expert's opinion as to testatrix's mental capacity, derived from preceding conflicting testimony in trial lasting three days, without framing hypothetical questions *held*, improper, though he did make references to certain testimony of other preceding experts and assumed truth of testimony of other witnesses.

8. SAME—OPINION AS TO CREDIBILITY OF OTHER EXPERTS.

Failure to strike opinion of expert medical witness as to credence which should be given testimony of other experts *held*, error, as an invasion of the province of the jury.

Appeal from Wayne; Chenot (James E.), J. Submitted June 14, 1934. (Docket No. 67, Calendar No. 37,858.) Decided December 11, 1934.

Sidney Elliott presented the last will of Elizabeth Elliott for probate. On objections of Martha Burbank Collins, the matter was certified to circuit court. Verdict and judgment for proponent. Contestant appeals. Reversed and new trial ordered.

*Kurth, Kurth & Cline,* for proponent.

*William Look* and *Frank A. Martin,* for contestant.

NORTH, J. This is a will contest. Elizabeth Burbank Elliott died November 2, 1932. She had been

ill for some time with cancer of the lungs and a secondary tumor or tumors in the brain. On October 25, 1932, she was taken to a hospital. An emergency operation on the brain was performed between 4:30 p. m. and 6:20 p. m. on the 26th. After the operation her will was prepared by her attending physician. It was executed about 8:45 that evening. He testified that the disposition made of her property in the will was in accordance with the request of the testatrix made to him earlier that same day. The testatrix left all of her property to her husband, Sidney Elliott. Her estate was substantial. Had she died intestate it would have been inherited by her husband and certain other heirs. Upon objection being filed in the probate court by one of the heirs at law to the admittance of the will for probate, the contest was certified to the circuit court. There was trial by jury and the will was sustained. The contestant, Martha Burbank Collins, has appealed.

There are included in the objections to the will that it was not the last will and testament of Elizabeth Elliott because it was not subscribed, declared, attested, witnessed or published in manner provided by law; that at the time the alleged will was made the testatrix was not of sound mind. The will in form is sufficient to comply with statutory requirements (3 Comp. Laws 1929, § 13482). There is testimony that in manner of its execution there was compliance with the statute (3 Comp. Laws 1929, § 13482). The testimony is in decided conflict as to the mental competency of the testatrix. Under the record the trial court ruled correctly in denying contestant's motion for a directed verdict; and it cannot be said as a matter of law that the verdict of the jury was against the great weight of the testimony.

The serious assignment of error presented by appellant is that the trial court committed prejudicial error by overruling contestant's objections to certain questions propounded to Dr. Lynn Hershey. The doctor was called in rebuttal as an expert witness in behalf of proponent as to the mental competency of the testatrix. He had not known or seen the testatrix in her lifetime so far as appears from the record, nor was he present at the autopsy performed on her body. But he was present in court throughout the trial of the case. He testified that he had heard the entire testimony of all the doctors, "every word of it." In so testifying this witness referred to the four doctors who had preceded him as witnesses. One of them testified in behalf of proponent and three of them in behalf of contestant. The method to which proponent resorted in taking the testimony of Dr. Hershey as an expert witness is indicated by the following:

"*Q.* Will you state your opinion, drawn from the evidence that you have heard here of these physicians, whether Elizabeth Elliott was competent or not, giving the reasons why you form that opinion?"

Counsel for contestant interposed the objection that in answering the question propounded the witness would be passing upon the weight of testimony given by other expert witnesses. Thereupon a colloquy occurred between the court and witness incident to which the court said:

"Now, doctor, never mind about what you think of the evidence submitted here. You are here as an expert testifying, assuming that what these other doctors testified to is correct?

"*A.* Yes."

Following this there was further comment by the court after which the witness was permitted to answer the above quoted question as follows:

"Assuming that all of this evidence that has been submitted is fact, in my opinion, it cannot be stated that this patient was either competent or incompetent mentally, because a clinical or bedside examination of the patient's mentality must be made carefully * * * or microscopic serial sections of that brain after death must be made on both sides of the brain * * * (in order) that an opinion can be rendered as to whether the individual is competent or incompetent mentally."

A motion to strike the foregoing answer interposed by contestant's counsel was overruled. The following question was then asked:

"Now asking for your opinion again as an expert neurologist, assuming that the testimony that you have heard is true, have you been able to form an opinion of your own as to the mentality or as to the competency or incompetency of Elizabeth Elliott?

"*A.*    Yes, sir.

"*Q.*    Will you state that opinion and the grounds for it?

"*A.*    Because of the evidence which was submitted here showing that the patient made a request to have certain—to have provisions made for the liquidation of certain known and legitimate debts, which in my opinion is a normal request, and assuming that the evidence is true that the provisions of a certain will were read to her, and that she responded in speech by saying yes, it is my opinion that she was competent to make that will."

Again contestant's counsel moved that the testimony of the witness be stricken and the motion was denied. Justification for the method of examination

pursued is based upon the contention that the declaration of this expert witness that he had heard all the testimony of each of the four doctors who had preceded him on the witness stand, "every word of it," was the equivalent of embodying a recital of such testimony in a hypothetical question.

In an attempt to sustain the ruling of the court in the instant case authorities are cited holding that in cases where the testimony is not voluminous, where the facts are few and unambiguous, are not controverted and the sound inference from them is, from a technical standpoint, a necessary one, the trial court may in its discretion permit an expert witness who has been present throughout the trial and heard all the testimony to express his opinion thereon without the framing of a hypothetical question embodying the essential facts. See 3 Chamberlayne, Modern Law of Evidence, § 2481; Lawson, Expert and Opinion Evidence (2d Ed.), p. 171; *People* v. *LeDoux,* 155 Cal. 535 (102 Pac. 517). Without passing upon the permissibility of such practice under the circumstances noted, it is sufficient to observe that it is not applicable in the instant case. Here the condensed record of the testimony covers slightly more than 100 pages of the printed record. Trial of the case in the circuit lasted three days. Sixteen witnesses had testified before Dr. Hershey was called to the stand. Four of them were expert witnesses whose testimony Dr. Hershey was called upon to review for the benefit of the jury.

Among the expert witnesses, if we include Dr. Hershey, there was a most decided conflict as to the fair inference to be drawn from the facts in the record as to Mrs. Elliott's physical and mental condition at the time of making the will, and as to the inference to be drawn from conditions disclosed

by the autopsy performed upon her. It would therefore seem clear that the practice hereinbefore alluded to as to the examination of expert witnesses without framing proper hypothetical questions is here entirely inapplicable.

Notwithstanding a witness may assert that he has heard all the testimony of the witnesses preceding him, the fallacy and the impracticability of making this assertion the basis of asking him hypothetical questions in a case of this character are at once obvious. In the first place such procedure leaves it to the expert witness so testifying to put his own construction upon the testimony which he claims to have in mind and accepts as being true. What that construction may be is unknown to the court, opposing counsel and jurors. Further, without a present recital of the facts or assumptions embodied in a hypothetical question and which necessarily constitute the basis of considering the answer to be given by the expert, it is not possible for the trial court to make an intelligent ruling, or for opposing counsel to interpose timely objection, or for jurors to accurately consider the testimony given. At best, expert testimony, even when taken through the medium of hypothetical questions, is fraught with sufficient difficulties; and it seems ill advised to countenance a laxity of procedure which will multiply the difficulties of taking expert testimony in the trial of cases. The difficulty alone of testing the accuracy of the witness's declaration that he has heard and has in mind the testimony of all preceding witnesses in a case of this character is sufficient to condemn the practice challenged by appellant. Practically the only method open to opposing counsel by which the accuracy of such a declaration can be tested is cross-examination which in the average case to be thor-

ough would necessarily be so lengthy and tedious as to be intolerable. So far as the jury is concerned the ultimate result would be confusion confounded. Similar practice has been reviewed and condemned in the recent case of *O'Donnell* v. *Oliver Iron Mining Co.*, 262 Mich. 470, 474. It was therein said:

"It was error, under the circumstances, to interrogate the expert witnesses without proper hypothetical questions, in which all of the facts from which the experts were to draw their conclusions were stated. Our attention is called to some authority that permits the practice of permitting an expert to base his conclusions on the testimony of previous witnesses, but even this authority does not go so far as to permit such questions where the previous testimony has been long and involved and is somewhat contradictory. (Citing) *Kempsey* v. *McGinniss*, 21 Mich. 123, 137."

In an earlier decision of this court it is said:

"An expert can never be safely permitted to state that he has read or heard the testimony of a witness or witnesses, and then base his opinion upon such testimony, without stating the particular points of the evidence—the facts—upon which he rests his conclusion. There is no reputable authority for any such method of examining an expert witness." *People* v. *Aikin*, 66 Mich. 460, 476 (11 Am. St. Rep. 512).

See, also, *Kempsey* v. *McGinniss*, 21 Mich. 123, and *Detzur* v. *B. Stroh Brewing Co.*, 119 Mich. 282 (44 L. R. A. 500, 5 Am. Neg. Rep. 371).

The record in this case discloses that preceding the above quoted questions and answers by Dr. Hershey, he had embodied in his testimony references to certain facts and circumstances testified to by the respective expert witnesses who had preceded him. It seems to be the contention of appellee's

counsel that including references to this preceding testimony in the answers previously given by Dr. Hershey and assuming the testimony of the other witnesses to be true is equivalent to embodying like references to the testimony in a hypothetical question. As applied to the instant case, we cannot assent to this contention. This record demonstrates quite conclusively the impossibility of proper conduct of the trial by such procedure. In effect it turned the expert witness loose to select such testimony as he saw fit to use, to put his own construction on it, and to emphasize these phases of the record in the presence of the jury without the control of the court or opposing counsel. In this case such practice was clearly in violation of former decisions of this court above cited.

"It may, perhaps, safely be stated as the majority rule, that generally an expert cannot be allowed to base his opinion on the evidence which he has heard given in the case." 11 R. C. L., p. 581, citing many cases in support of the majority rule and a few to the contrary.

Appellant also assigns as error that the trial court permitted Dr. Hershey to pass upon the weight of testimony given by the other doctors as experts, thereby permitting Dr. Hershey to invade the province of the jury. In the instant case Dr. Hershey was allowed to go much further than express his opinion as to competency or incompetency of the testatrix, based upon the testimony of professional witnesses who had preceded him. He was allowed in effect to say to the jury that the testimony of the expert witnesses who had preceded him was not entitled to any credence. This clearly appears from the following portions of the record. Dr. Gariepy,

who performed the operation on testatrix three or four hours before she executed her will, testified:

"The entire left side of her brain was macerated, that is, soft. * * * I don't see how anyone, with the amount of brain tissue she had damaged, could have normal function. * * * Well, all I can say is she had a tremendous amount of trouble there. I don't see how anyone with that much trouble could maintain a normal function."

After reciting some of the facts on which Dr. Gariepy based his testimony of lack of "normal function," Dr. Hershey was permitted to say to the jury: "All those factors in themselves *would not be evidence* to show that she was mentally either competent or incompetent."

Dr. McQuiggan attended the testatrix both before and at the time of the operation on her brain, visited here thereafter, was present when her will was executed, and also took part in the autopsy performed upon the remains of the testatrix. He testified in detail as to her condition. In substance he said he was of the opinion, especially in view of the knowledge he acquired at the time of the autopsy, that the testatrix probably was not entirely competent, "was not competent at the time exhibit 1 (the will) was executed." Dr. Hershey was called to the stand in rebuttal, and, after referring to some of the physical and mental conditions of testatrix as disclosed in the testimony of Dr. McQuiggan, said to the jury: "*All that evidence does not show* at all that she was mentally either competent or incompetent." It would be difficult to perceive of a witness's being allowed to more effectually usurp the function of the jury than was done in this case by the method resorted to in taking Dr. Hershey's testimony. Contestant's motion to strike Dr. Hershey's testimony just above quoted was denied, at least it

was not granted. Clearly this constituted prejudicial error.

Judgment entered in the circuit court will be set aside and a new trial ordered. Appellant will have costs of this court.

NELSON SHARPE, C. J., and POTTER, FEAD, WIEST, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.